**UNITED STATES of America, Appellee,**

v.

**Anthony GUARIGLIA, Defendant–
Appellant.**

**No. 409, Docket 91–1372.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 7, 1992.

Decided April 17, 1992.

Michael D. Rips, New York City (Allison Manning, Cathy W. Isaacson, David F. Bayne, Wright Manning Rips & Maloney; Lawrence G. Sager; and Howard F. Cerny, of counsel), for defendant-appellant.

Steven A. Standiford, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty. and Daniel C. Richman, Asst. U.S. Atty., of counsel), for appellee.

Before MINER, ALTIMARI and MAHONEY, Circuit Judges.

MINER, Circuit Judge:

Defendant-appellant Anthony Guariglia appeals from a judgment of conviction entered on June 3, 1991 in the United States District Court for the Southern District of New York (Mukasey, *J.*) after a jury found him guilty of criminal contempt, under 18 U.S.C. § 401(3), for violating a bankruptcy court order, and of perjury, under 18 U.S.C. § 1623. The charges against defendant stem from his participation in a bribery and fraud conspiracy involving the officers and directors of the Wedtech Corporation ("Wedtech"), and his subsequent cooperation with the government in the prosecution of other participants in the scheme. *United States v. Wallach*, 935 F.2d 445 (2d Cir.1991).

The indictment alleged that (i) defendant by his gambling activities violated a bankruptcy court order restraining defendant and other Wedtech defendants from, among other things, "gambling with any property or monies owned, controlled, or possessed by any of [them];" and (ii) defendant made perjurious statements at the trial of other Wedtech defendants by testifying that he had not gambled after the summer of 1988, when he in fact gambled in the fall of that same year. Defendant appeals his conviction, arguing, *inter alia*, that the district court did not have authority, under section 401, to sanction defendant for violation of the bankruptcy court order, and that the district court committed reversible error by applying the wrong legal standard for the "materiality" element of perjury. For the reasons stated below, we affirm the judgment of the district court.

## BACKGROUND

This appeal is part of the tangled litigation web surrounding the now defunct Wedtech and the dubious dealings that defendant and others had with and through the corporation. The checkered history of Wedtech—a South Bronx based engineering company subsisting largely on government contracts—and the scandals leading to its demise are more fully set forth in this Court's opinion in *Wallach*, 935 F.2d 445.

Defendant Guariglia joined Wedtech in May 1983, and was the corporation's President and Chief Operating Officer, as well as a member of its Board of Directors. Guariglia and other Wedtech officers and directors allegedly engaged in a conspiracy to bribe government officials, commit mail fraud, and make illegal payments to labor officials. On December 26, 1986, Wedtech filed for bankruptcy. In early 1987, Wedtech filed an adversary proceeding in the United States Bankruptcy Court for the Southern District of New York against Guariglia and three other former Wedtech officers to recover corporate money and assets that allegedly were converted to improper personal uses.

On January 26, 1987, Guariglia entered into a cooperation agreement with the government whereby he pled guilty to conspiracy to bribe government officials, conspiracy to file false statements, and conspiracy to commit mail fraud. On March 11, 1987, Wedtech obtained a preliminary injunction from the bankruptcy court restraining Guariglia from disposing of any of his assets. Pursuant to his cooperation agreement with the government, Guariglia testified as a government witness, in the spring of 1988, at the trial of Congressman Mario Biaggi, Bronx Borough President Stanley Simon, and other individuals participating in Wedtech misdealings. From this testimony, Wedtech learned that while Guariglia was cooperating with the government, he had lost substantial sums of money as a consequence of gambling in Atlantic City, New Jersey.

On June 30, 1988, Wedtech obtained an order on stipulation from the bankruptcy court directing entry of final partial judgment against Guariglia, in the amount of $1,624,702, for sums Guariglia improperly diverted and received from Wedtech. On that same date, the bankruptcy court filed a second stipulation and order ("Order"), which provided:

> Defendants ... are restrained from transferring, converting, disposing of or gambling with any property or monies owned, controlled or possessed by any of the defendants without prior approval of

either the [bankruptcy court] or Wedtech....

In the spring and summer of 1989, Guariglia extensively testified for the government as a key witness at the trial of Rusty K. London, E. Robert Wallach, and Wayne F. Chinn, who were alleged participants in the Wedtech criminal scheme. *See Wallach*, 935 F.2d at 455. On direct examination, Guariglia stated that he had ceased gambling after the summer of 1988. *Id.* On cross-examination, however, Guariglia admitted that he had signed gambling markers in September and October of 1988. *Id.* On redirect, Guariglia attempted to explain that although he had signed the markers, he did not gamble with the chips, claiming that he used the chips to satisfy a previously incurred debt. *Id.* In December 1989, four months after conviction of the *Wallach* defendants, the government learned from Ira Cohen, a former friend and business associate of Guariglia's, that Cohen had seen Guariglia gambling in Puerto Rico in November 1988. Thereafter, Guariglia admitted to federal prosecutors that he had gone to Puerto Rico and signed markers at a casino, but he denied having gambled with the chips.

On June 26, 1990, Guariglia was indicted in the district court for criminal contempt of the bankruptcy court Order prohibiting him from gambling (*see* 18 U.S.C. § 401(3)), perjury committed at the *Wallach* trial (*see* 18 U.S.C. § 1623), and making false statements to federal prosecutors (*see* 18 U.S.C. § 1001). At his trial, the district judge concluded that the materiality element of perjury was for the court to decide, and determined, citing *United States v. Berardi*, 629 F.2d 723, 729 (2d Cir.), *cert. denied*, 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980), that " '[m]ateriality is ... demonstrated if the question posed is such that a truthful answer could help the inquiry, or a false response hinder it, and these effects are weighed in terms of potentiality rather than probability.' " The court then found that the element was met, since "a truthful answer ... could have tended to undermine Guariglia's credibility, and thus could have helped the inquiry on which the jury was embarked...." A jury convicted Guariglia

on the contempt and perjury charges, but not on the charge of making false statements to prosecutors. The jury apparently rejected Guariglia's claim that he did not gamble with the chips that he had purchased. For the reasons set forth below, we affirm the judgment of conviction entered in the district court.

## DISCUSSION

I. *The district court's exercise of jurisdiction*

■ The federal contempt statute, 18 U.S.C. § 401, provides:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

*       *       *       *       *       *

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

Guariglia argues that, under this statute, the district court did not have the authority to sanction him for violation of the Order of the bankruptcy court. He asserts that the plain language of section 401(3)—providing the court with the power to punish for disobedience of "its" order—requires that the court sanctioning the defendant be the same court which issued the order that is the basis for the contempt. Guariglia contends that Bankruptcy Rule 9020 prescribes the contempt procedure to be followed for contempt of the bankruptcy court Order, and that this Rule requires that the issue first be submitted to the bankruptcy court for a hearing and determination, with the opportunity for *de novo* review in the district court. We do not agree.

Section 151, Title 28 of the United States Code, entitled "Designation of bankruptcy courts," states:

In each judicial district, the bankruptcy judges in regular active service *shall constitute a unit of the district court* to be known as the bankruptcy court for that district.

28 U.S.C. § 151 (emphasis added). Under this provision, "much of the autonomy has been stripped from the bankruptcy courts, now labeled 'units' of the district courts." *Griffith v. Oles (In re Hipp, Inc.),* 895 F.2d 1503, 1514 (5th Cir.1990). Indeed, "[t]he district court may withdraw, in whole or in part, any case or proceeding [from the bankruptcy court] ... for cause shown." 28 U.S.C. § 157(d); *see also Goerg v. Parungao,* 930 F.2d 1563, 1565 (11th Cir.1991) ("original jurisdiction over bankruptcy cases is vested in Article III courts and [the] bankruptcy courts [retain] jurisdiction only at the discretion of the district court") (citing 28 U.S.C. §§ 1334(a) and (b), 151, 157).

By definition, under the statutory scheme, the bankruptcy court Order restraining Guariglia from gambling was issued by a "unit" of the district court. *See* 28 U.S.C. § 151. As an Order originating from a unit of the district court, it necessarily follows that the Order constitutes an Order of both the bankruptcy court *and* the district court for the district encompassing the bankruptcy court from which the Order emanated. Thus, the district court clearly had the authority to punish for disregard of "its" authority. *See* 18 U.S.C. § 401(3); *cf. Resyn Corp. v. United States,* 945 F.2d 1279, 1284 (3d Cir.1991) (holding that since bankruptcy court is unit of district court, statute entitling successful litigant to interest on money judgment "recovered in district court" necessarily applies to bankruptcy court judgments); *United States v. Klein,* 910 F.2d 1533 (7th Cir.1990) (reinstating jury verdict obtained in district court finding defendant guilty of criminal contempt, under 18 U.S.C. § 401(3), for violation of bankruptcy court order). Therefore, under the plain language of section 401, the district court had jurisdiction to hear and determine the contempt case against Guariglia for violation of the bankruptcy Order.

We note also that there is a serious question as to whether the bankruptcy court would have had the authority to punish Guariglia for criminal contempt of its Order had the government first sought a determination by the bankruptcy court. *See*

Bankr.R. 9020, Advisory Comm. Note–1987 Amendment ("This rule, as amended, recognizes that bankruptcy judges may not have the power to punish for contempt."); *see also Griffith,* 895 F.2d at 1509 (bankruptcy court lacks power to punish for criminal contempt). We need not resolve this issue, however, as we now hold that a district court may, in the first instance, punish for criminal contempt a violation of an order of a bankruptcy court where the bankruptcy court is a "unit" of the district court imposing the punishment.

## II. *"Materiality" standard for perjury*

■ To be convicted of perjury, a defendant must have made a "false material declaration" "to any court or grand jury of the United States." 18 U.S.C. § 1623. It is firmly established that the trial court initially determines the materiality of a defendant's statement as a matter of law, *United States v. Mancuso,* 485 F.2d 275, 280 (2d Cir.1973) (citations omitted), before submitting the remaining factual issues to the jury. *See Kungys v. United States,* 485 U.S. 759, 772, 108 S.Ct. 1537, 1547, 99 L.Ed.2d 839 (1988); *Sinclair v. United States,* 279 U.S. 263, 298–99, 49 S.Ct. 268, 273–74, 73 L.Ed. 692 (1929); *cf. United States v. Novod,* 927 F.2d 726, 729 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2018, 114 L.Ed.2d 104 (1991); *United States v. Demauro,* 581 F.2d 50, 53 (2d Cir.1978). In light of the overwhelming weight of established authority, we decline Guariglia's invitation to hold that the materiality issue must be submitted for jury determination.

In this case, the district judge concluded that the statements in issue were material because "a truthful answer ... *could have* tended to undermine Guariglia's credibility, and thus *could have* helped the inquiry on which the jury was embarked...." (emphasis added). Guariglia asserts that the district court applied the incorrect standard for materiality. He relies on our decision in *United States v. Freedman,* 445 F.2d 1220 (2d Cir.1971), claiming that "in order for a knowingly false statement to be material, it must be shown that a truthful answer *would have* been of sufficient pro-

bative importance to the inquiry so that, as a minimum, further investigation *would have* occurred." *Id.* at 1226–27 (emphasis added).

■ Generally, we have deemed a statement material, for purposes of evaluating perjury before a grand jury, when a "truthful answer *could* conceivably *have aided* the grand jury investigation." *Mancuso,* 485 F.2d at 280–81 (emphasis added). *See also United States v. Moon,* 718 F.2d 1210, 1237 (2d Cir.1983); *United States v. Berardi,* 629 F.2d 723 (2d Cir.), *cert. denied,* 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980). This formulation derives from *Carroll v. United States,* 16 F.2d 951 (2d Cir.), *cert. denied,* 273 U.S. 763, 47 S.Ct. 477, 71 L.Ed. 880 (1927), where we stated that testimony is material if it "has a natural effect or tendency to influence, impede, or dissuade the grand jury from pursuing its investigation...." *Id.* at 953. In *Freedman,* we relied on our *Carroll* analysis, but phrased the standard in terms of *"would have,"* where the false testimony was given during an SEC investigative proceeding. Our subsequent perjury cases arising in the investigatory context have not clearly delineated when the "would have," rather than "could have," test should be applied. In point of fact, those cases cast serious doubt on whether the two tests function differently as a practical matter, as we have noted that the same conclusion results in each of those cases under either formulation. *See Novod,* 927 F.2d at 729 n. 1; *Demauro,* 581 F.2d at 53 n. 1; *United States v. Doulin,* 538 F.2d 466, 470 n. 3 (2d Cir.), *cert. denied,* 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976); *Mancuso,* 485 F.2d at 281 n. 17.

We need not, however, resolve the issue of the standard of materiality to be applied for false statements made in an investigative setting because this case involves perjury committed at a trial before a petit jury. In evaluating materiality in this context, the focus properly is on the impact on the trier of fact, not on whether further investigation would or could have resulted. Therefore, our prior precedents setting forth the standards to be applied in various investigative settings are of limited usefulness.

With regard to perjury committed at trial before a petit jury or a judge sitting as a factfinder, we previously have concluded that "[t]he test of materiality is whether the false testimony was capable of influencing the fact finder in deciding the issues before [it]." *United States v. Fayer,* 573 F.2d 741, 745 (2d Cir.), *cert. denied,* 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978). *See also United States v. Salinas,* 923 F.2d 339, 341 (5th Cir.1991); *United States v. Flowers,* 813 F.2d 1320, 1325–26 (4th Cir.1987); *United States v. Sablosky,* 810 F.2d 167, 169 (8th Cir.), *cert. denied,* 484 U.S. 833, 108 S.Ct. 109, 98 L.Ed.2d 68 (1987); *United States v. Anderson,* 798 F.2d 919, 926 (7th Cir.1986); *United States v. Girdner,* 773 F.2d 257, 259 (10th Cir. 1985), *cert. denied,* 475 U.S. 1066, 106 S.Ct. 1379, 89 L.Ed.2d 605 (1986); *United States v. Scivola,* 766 F.2d 37, 44 (1st Cir.1985). In the trial context, this standard properly reflects the notion that the materiality of false trial testimony should be analyzed in terms of the false testimony's impact on the factfinder's ultimate verdict, and not in terms of whether the false testimony hinders further inquiry.

■ Applying this standard, we already have determined that Guariglia's false statements were capable of influencing the *Wallach* tribunal on the issues before it, and therefore are material for purposes of the perjury statute. In *Wallach,* we reversed the defendants' convictions because we found that "had the jury been aware of Guariglia's perjury[,] it *probably would have acquitted* the defendants." *Wallach,* 935 F.2d at 458 (emphasis added). This finding obviously satisfies the materiality standard, since such a determination necessarily means that the statements were capable of influencing the jury on the issue of guilt or innocence of the defendants in that case.

Guariglia argues that different tests are applied in deciding whether a statement is material for perjury purposes and in deciding whether perjured testimony warrants

reversal of a conviction. He asserts that the *Wallach* holding, being a product of the latter analysis, should not be determinative when analyzing materiality in his perjury trial and does not foreclose this Court from deeming the statements not material. We reject this strained reasoning. Regardless of the legal question at issue in *Wallach,* our conclusion in that case makes it plain that the false testimony was at a minimum capable of influencing the jury on the issue of guilt or innocence. Therefore, based on *Wallach*'s conclusion as to the impact of Guariglia's false testimony on that trial's outcome, we find the false trial testimony to be material.

We have considered appellant's remaining arguments and find them to be without merit.

## CONCLUSION

For the reasons stated, we affirm the judgment of the district court.