**In re Thomas R. VOLPERT, Jr., Debtor.**

**John VOLPERT, Sr., Plaintiff,**

**v.**

**Bernard ELLIS, Defendant.**

**Bankruptcy No. 93 B 13982.
Adv. No. 93 A 01705.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 18, 1995.

Brodsky and Hoxha, Chicago, IL, for plaintiff.

### FINDINGS OF FACT AND CONCLU-SIONS OF LAW ON MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927

JACK B. SCHMETTERER, Bankruptcy Judge.

The instant Adversary Complaint relates to the bankruptcy proceeding of Thomas R. Volpert, Jr. ("Debtor"), filed under Chapter 7 of 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). Plaintiff John Volpert, Sr. ("Plaintiff") filed this Adversary against Debtor seeking to bar dischargeability of certain debts under 11 U.S.C. § 523(a) and to bar Debtor's discharge under 11 U.S.C. § 727(a).

The instant Motion by Plaintiff seeks sanctions against Debtor's counsel Bernard Ellis ("Ellis") under 28 U.S.C. § 1927 for multiplying proceedings in this Adversary "unreasonably and vexatiously" ("Motion"). Basically, this Motion relates to Ellis's resistance to orders to answer Counts 4, 5, and 7 of the Adversary Complaint. For reasons stated herein, the Motion is allowed and sanctions are imposed in the amount of $1,000.00.

### I. FINDINGS OF FACT

The following appears from the record and the evidentiary hearing held on the Motion:

On June 30, 1993, Debtor Thomas R. Volpert, Jr. filed his petition for relief under Chapter 7 of the Bankruptcy Code. Debtor thereafter retained attorney Bernard Ellis to represent him in matters relating to the pending bankruptcy case. Ellis is an attorney admitted to the practice of law in the State of Illinois and in the United States District Court for the Northern District of Illinois.

On December 29, 1993, Plaintiff filed this Adversary Complaint. He asserted therein that certain debts allegedly owed him by Debtor should be deemed non-dischargeable under § 523(a) of the Bankruptcy Code and that Debtor should be denied a discharge under § 727(a). Debtor was served with summons and Adversary Complaint on December 30, 1993, and was thereby required to file an appearance and answer on or before January 29, 1994. A status hearing was held in this Adversary on February 2, 1994. Debtor had not answered or otherwise pleaded to Plaintiff's Complaint by that date. Ellis appeared at that hearing on Debtor's behalf and this Court allowed him to file an answer within fourteen days, by February 15, 1994.

As of April 14, 1994, Ellis had still not yet filed his appearance or answered the Complaint. Accordingly, that day Plaintiff filed a Motion for Order of Default. That Motion was set April 21, 1994, for hearing. On that date, Ellis appeared on Debtor's behalf. Hearing on the Motion for Default was again continued until May 11, 1994, to give Ellis an opportunity to prepare pleadings.

Ellis then filed a motion to dismiss all counts of the Complaint for Plaintiff's lack of standing. Alternatively, the same motion sought dismissal of Counts 1, 2, 3, and 6 on various other grounds. There were no alternative grounds asserted for dismissal of Counts 4, 5, and 7. On May 2, 1994, the Motion to Dismiss for Lack of Standing was considered and denied for reasons stated from the bench. Other grounds were asserted as to Counts 1, 2, 3, and 6, and Ellis was ordered to answer Counts 4, 5, and 7 within seven days. Instead, on May 11, 1994 (the date set for hearing on Plaintiff's motion for default), he moved for reconsideration of his Motion to Dismiss the entire Complaint for lack of standing. That Motion for reconsideration was heard and denied on May 11, for reasons stated from the bench. Debtor–Defendant was then ordered once again to answer Counts 4, 5, and 7 of the Complaint within seven days, and Ellis was expressly warned that failure to so answer would constitute grounds for an entry of default on those counts. Ellis repeatedly assured this Court he would file the requested answer within seven days, by May 18, 1994. Since conduct of both counsel was less than laudable at that hearing, they were both cautioned

that formal proceedings might result from any repetition of their lack of civility.

Despite his express promise to do so, and the repeated orders to do so, Ellis failed to file an answer to Counts 4, 5, and 7 of the Complaint by May 18. Instead, on May 19, 1994, Ellis filed a Motion to Dismiss those counts individually. In the alternative, he moved this Court to require more definite statements as to each. A hearing was scheduled on that Motion for May 25, 1994.

On May 25, this Court denied Debtor's then pending Motion to Dismiss Counts 4, 5, and 7, for reasons stated from the bench. Plaintiff was given fourteen days to file a more definite statement as to those counts, and Debtor was yet again ordered to answer Counts 4, 5, and 7 of Plaintiff's Complaint by a date after the more definite statement was to be filed.

On June 22, 1994, almost five months from the date an answer was originally due, and after the foregoing history of events, Ellis finally filed Debtor's Answer to Counts 4, 5, and 7. The purported answer was legally insufficient, however, in that Debtor failed to admit, deny, or otherwise state, as required by Fed.R.Civ.P. 8 (Fed.R.Bankr.P. 7008), that an admission or denial could not be made, with respect to the most critical allegations in the Complaint. The important matters alleged were thereby avoided in this purported "Answer." In response, Plaintiff filed a Motion to Strike Debtor's Answer in its entirety. On July 1, 1994, this Court heard that Motion to Strike and allowed it, for reasons stated from the bench. An Order of Default was thereupon entered on Plaintiff's pending Motion against Debtor–Defendant as to Counts 4, 5, and 7. That order was entered due to repeated failure of Defendant to comply with express court orders to answer these Counts and the fact that those counts were then in default.

On July 11, 1994, Ellis moved to vacate the Default Order and to grant to Debtor leave to file a First Amended Answer to Counts 4, 5, and 7. Ellis failed, however, to serve Plaintiff's counsel with a copy of the proposed Amended Answer. This was the second time he had failed to serve his opponent in advance of a hearing, although they officed in the same building. For his failure to notice Plaintiff's counsel properly, this Motion was denied.

On July 15, 1994, Debtor moved this Court to reconsider the earlier Motion to Vacate Default and for Leave to File a First Amended Answer to Counts 4, 5, and 7. Ellis again failed, however, to serve Plaintiff's counsel with a copy of the proposed Answer. By this point, it certainly appeared that Ellis was withholding proper notice from his opponent either through gross indifference or a desire to "play hard ball." On July 25, 1994, when this latest Motion was presented, Defendant was given until July 27, 1994, to tender a proposed Amended Answer on proper notice to Plaintiff's counsel, and the new Motion was set for hearing on July 28.

On July 28, 1994, this Court conducted a hearing on Debtor's pending Motion. The earlier Default Order was vacated and Debtor was permitted to file his First Amended Answer instanter. Roughly six months had elapsed from the time Debtor was first ordered to answer the Complaint until the date he complied with these orders. At the July 28, 1994, hearing, Plaintiff was given leave to file an application for sanctions against Ellis within 28 days.

On August 8, 1994, Plaintiff filed his Motion for Sanctions under 28 U.S.C. § 1927, alleging that Ellis multiplied these proceedings "unreasonably and vexatiously." This Court conducted an evidentiary hearing on Plaintiff's Motion for Sanctions, and final argument was heard. The parties fully briefed the legal issues involved.

## II. CONCLUSIONS OF LAW

### A. AUTHORITY OF BANKRUPTCY JUDGE TO IMPOSE SANCTIONS UNDER 28 U.S.C. § 1927

As a threshold issue, it must first be considered whether a bankruptcy judge has authority to entertain the pending Motion. Plaintiff has moved for sanctions under 28 U.S.C. § 1927, which provides that:

[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be re-

quired by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Most courts considering § 1927 sanctions have held that authority to impose such sanctions turns on whether a particular court is authorized to exercise powers traditionally vested in a "court of the United States or any Territory thereof." [1] Although legislative history surrounding enactment of § 1927 is sparse, the Historical and Revision Notes appended to 28 U.S.C.A. § 1927 refer to the definition of "court of the United States" set forth in 28 U.S.C. § 451. Section 451, a definition section applicable to all of Title 28, presently provides in relevant part:

As used in this title:

The term "court of the United States" includes the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of International Trade and any court created by Act of Congress the judges of which are entitled to hold office during good behavior.

28 U.S.C. § 451.

Ellis objects to this Court's authority to impose sanctions under § 1927. He premises his objection on his reading of § 1927 under which only "court[s] of the United States or any Territory thereof" have authority to levy § 1927 sanctions. Ellis asserts that bankruptcy courts are not "court[s] of the United States" as defined in § 451, and concludes that this Court therefore lacks jurisdiction to entertain the pending motion.

The Seventh Circuit has yet to resolve expressly the issue of whether bankruptcy judges may impose § 1927 sanctions. Several panel opinions in this Circuit have, however, manifested support for such authority. The Seventh Circuit recognizes a duty to address, *sua sponte*, any jurisdictional infirmities.[2] However, panels in this Circuit have on at least two separate occasions affirmed § 1927 sanctions imposed by bankruptcy judges without questioning the authority of these judges under the statute.[3] Omission of these opinions to discuss the present issue suggests that the panels involved did not perceive it to be a serious question. However, that history by itself does not provide settled authority on the point.[4]

■ While the Seventh Circuit has not addressed this jurisdictional issue directly, other authorities have done so. Several dis-

---

**1.** *See, e.g., In re Courtesy Inns, Ltd.*, 40 F.3d 1084, 1085–87 (10th Cir.1994) (most recent circuit decision considering this precise issue); *In re Grewe*, 4 F.3d 299, 303–05 (4th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1056, 127 L.Ed.2d 377 (1994); *but see Novelty Textile Mills, Inc. v. Stern*, 136 F.R.D. 63, 75 n. 21 (S.D.N.Y. 1991) (concluding that reference in § 1927 to an "attorney . . . admitted to conduct cases in any court of the U.S. or any Territory thereof" does not require that the term "court" in the phrase "by the court" be read to mean "court of the U.S.").

**2.** *See Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934) (Appellate courts under a duty to address not only own jurisdiction, but jurisdiction of court below as well); *Stearnes v. Baur's Opera House, Inc.*, 3 F.3d 1142, 1144 (7th Cir.1993) ("It is our duty to raise and consider the issue of jurisdiction sua sponte when it appears from the record that jurisdiction is lacking."); *Krueger v. Cartwright*, 996 F.2d 928, 930 (7th Cir.1993).

**3.** *See In re TCI Limited*, 769 F.2d 441 (7th Cir. 1985); *see also Matter of Lewis*, 920 F.2d 935,

1990 WL 208777 (7th Cir.) (unpublished disposition listed in "Table of Decisions Without Reported Opinions" found in Federal Reporter); *but see In re Memorial Estates, Inc.*, 950 F.2d 1364, 1369 (7th Cir.1991), *cert. denied sub nom. Cemco, Inc. v. Newman*, —— U.S. ——, 112 S.Ct. 2969, 119 L.Ed.2d 589 (1992) ("Although we upheld a bankruptcy court's imposition of a sanction under § 1927 [in *TCI Ltd.*] . . . we did not discuss the court's jurisdiction to impose the sanction.").

**4.** The Seventh Circuit's omission to discuss bankruptcy court authority under § 1927 is of limited precedential value. Although it tends to suggest how particular Circuit judges might rule on the issue, failure to properly examine the exercise of subject matter jurisdiction in one case does not foreclose examination of such jurisdiction in a later case. *See Memorial Estates, Inc.*, 950 F.2d at 1369. However at the very least, because this Circuit has previously upheld § 1927 sanctions by bankruptcy judges and has not since prohibited such sanctions on jurisdictional grounds, there is certainly no precedent barring application of the statute to this case. *See Knepper v. Skekloff*, 154 B.R. 75, 79 (N.D.Ind.1993) (Refusing, on appeal, to find bankruptcy judge without jurisdiction to impose sanctions under § 1927).

trict judges in the Northern District of Illinois have considered whether bankruptcy courts are authorized to exercise various powers of courts of the United States and have come to different conclusions.[5] Under the doctrine of *stare decisis*, bankruptcy judges are not governed by decisions of individual district judges in multi-judge districts in cases not before the bankruptcy judge.[6] Nonetheless, considerable deference will be afforded to well-reasoned district court decisions, as well as to the reasoning of decisions from other Circuits.

Most recently, in *Regensteiner Printing Co.*, Judge Aspen concluded that a bankruptcy judge could not impose sanctions under § 1927. 142 B.R. at 818. Judge Aspen minimized the importance of his decision by suggesting it would be of minimal effect because bankruptcy judges can ground similar sanc-

tions under either Fed.R.Bankr.P. 9011 or their equitable powers under § 105 of the Bankruptcy Code. *Id.* at 819. However, while that was certainly true in that case, the opinion appears to have understated the potentially pervasive effect of that ruling.[7]

Judge Aspen limited his analysis to whether the bankruptcy court was a "court of the United States" under 28 U.S.C. § 451. He first examined the text of § 451 and relied on the fact that Congress did not expressly include "bankruptcy courts" in the current § 451 definition of "court of the United States." He then considered the provision in § 451 as to "any court created by Act of Congress the judges of which are entitled to hold office during good behavior." That language mirrors that found in Article III of the Constitution, describing Article III judges.

5. *See In re Regensteiner Printing Co.*, 142 B.R. 815, 817–19 (N.D.Ill.1992) (Aspen, J.) (disallowing § 1927 sanctions because bankruptcy courts are not "courts of the United States"); *In re Schatz*, 122 B.R. 327, 328 (N.D.Ill.1990) (Duff, J.) (bankruptcy courts not granted contempt powers under 28 U.S.C. § 401 as "courts of the United States"). *Cf. In re Chambers*, 140 B.R. 233, 237–38 (N.D.Ill.1992) (Williams, J.) (bankruptcy courts qualify as "courts of the United States" for purposes of awarding fees under 26 U.S.C. § 7430); *In re Korhumel Indus., Inc.*, 103 B.R. 917, 920–21 (N.D.Ill.1989) (Duff, J.) (Bankruptcy courts are not "courts of United States" for purposes of hearing declaratory judgment actions because they are not Article III courts. Nevertheless, under 28 U.S.C. § 157(a), "the district courts effectively delegate their power to hear certain declaratory judgment actions to the bankruptcy courts." *Id.* at 921.).

Prior to *Regensteiner Printing Co.*, several other district judges expressly considered whether bankruptcy judges could impose § 1927 sanctions but ruled on alternative grounds. *See In re Memorial Estates*, 89 C 3719, 89 C 5833, Transcript of Proceedings (N.D.Ill. Nov. 7, 1989) (Shadur, J.) (expressing concern in dicta over whether bankruptcy judges could impose § 1927 sanctions); *In re Memorial Estates, Inc.*, 116 B.R. 108, 110 (N.D.Ill.1990) (Plunkett, J.) (duly noting and seconding Judge Shadur's reasoning, in dicta, that it was "questionable whether the bankruptcy court had jurisdiction to impose sanctions under this provision [28 U.S.C. § 1927] against anyone" before holding § 1927 inapplicable on other grounds); *In re Memorial Estates, Inc.*, 132 B.R. 19, 20–21 (N.D.Ill.1991) (Duff, J.) (acknowledging in dicta what Judge Duff believed to be the "well-grounded" concerns of Judges Shadur and Plunkett that bankruptcy judges do not have

authority to impose sanctions exclusively under § 1927).

6. *See generally In re Shattuc Cable Corp.*, 138 B.R. 557, 565–67 (Bankr.N.D.Ill.1992) (Katz, J.) (thorough analysis of issues as to precedential value of district court decisions); *In re Gaylor*, 123 B.R. 236, 241–43 (Bankr.E.D.Mich.1991); *In re Rheuban*, 128 B.R. 551, 555 (Bankr. C.D.Cal.1991); *See also In re Eiland*, 170 B.R. 370, 378 (Bankr.N.D.Ill.1994) (Schmetterer, J.); *In re Abernathy*, 150 B.R. 688, 693 n. 7 (Bankr. N.D.Ill.1993) (Ginsberg, J.); *In re Goode*, 131 B.R. 835, 840 n. 2 (Bankr.N.D.Ill.1991) (Schmetterer, J.).

7. Indeed, a myriad of other federal procedural issues turn on a determination of whether bankruptcy courts can serve in limited capacities as courts of the United States. *See, e.g., In re G.S.F. Corp.*, 938 F.2d 1467 (1st Cir.1991) (questionable whether Anti–Injunction Act, 28 U.S.C. § 2283, applicable to bankruptcy courts); *In re Amatex Corp.*, 107 B.R. 856, 862–63 (E.D.Pa.1989) (bankruptcy courts have power to issue declaratory judgments under Declaratory Judgment Act, 28 U.S.C. § 2201); *In re Perroton*, 958 F.2d 889 (9th Cir.1992) (bankruptcy courts do not have power to allow litigants to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)); *Grewe*, 4 F.3d 299 (bankruptcy courts have power to shift attorney fees when government takes untenable position in tax litigation before a bankruptcy judge under 26 U.S.C. § 7430); *United States v. Guariglia*, 962 F.2d 160, 163 (2d Cir.1992) (bankruptcy judges can issue contempt orders under Federal Contempt Statute, 18 U.S.C. § 401); *Gower v. Farmers Home Administration (In re Davis)*, 899 F.2d 1136, 1138–42 (11th Cir. 1990) (bankruptcy court not "court of the United States" under 28 U.S.C. § 2412).

Article III judges, by definition, have life tenure. "Bankruptcy courts," he reasoned, did not fit under this provision because bankruptcy judges serve a specified term of fourteen years, not life tenure. *See* 28 U.S.C. § 152(b). Without more, Judge Aspen concluded that the bankruptcy court was not a "court of the United States" and, thus, could not levy sanctions pursuant to 28 U.S.C. § 1927. However, this viewpoint in *Regensteiner Printing Co.* as to the nature of the "bankruptcy court" does not square with Judge Aspen's views of that "court" in a different context in an earlier decision.[8]

Several circuit court panels have considered whether bankruptcy courts could exercise various powers granted to courts of the United States and have reached divergent results.[9] In *Becker's Motor Transp., Inc.*, a Third Circuit panel concluded that, under 28 U.S.C. § 451, bankruptcy courts do not serve as "courts of the United States" as then defined for purposes of the Declaratory Judgment Act, 28 U.S.C. § 2201. 632 F.2d at 246–47. That conclusion was reached in 1980, however, under the prior bankruptcy jurisdictional framework; it has no remaining persuasive value under the present statutory scheme.

The Eleventh Circuit twice considered similar issues, and concluded in both instances that bankruptcy courts cannot serve in limited capacities as "courts of the United States." *Brickell Inv. Corp.*, 922 F.2d at 699–702; *Davis*, 899 F.2d at 1138–42. The Eleventh Circuit's reasoning is indistinguishable from that invoked by Judge Aspen in *Regensteiner Printing Co.*, 142 B.R. at 817–19. Because bankruptcy courts are not expressly listed in § 451, and because bankruptcy judges lack tenure protection, this Circuit held that bankruptcy courts cannot serve as "courts of the United States." *Brickell Inv. Corp.*, 922 F.2d at 702; *Davis*, 899 F.2d at 1142.

Most recently, the Tenth Circuit examined whether bankruptcy judges could impose § 1927 sanctions and concluded that they lack authority to do so. *Courtesy Inns, Ltd.*, 40 F.3d 1084. The panel in *Courtesy Inns*,

---

8. *See In re Gianakas*, 56 B.R. 747, 750–52 (N.D.Ill.1985) (Aspen, J.). At first glance, the underlying issues appear different. In *Gianakas*, debtors brought an action against a former creditor in state court, asserting that a sum of money paid to the creditor had been paid under duress. In response, the creditor filed an application for removal in the Clerk's office of the bankruptcy court. Debtors thereafter moved to return the case to state court because the bankruptcy court lacked jurisdiction. Judge Aspen noted that the bankruptcy court was actually a unit of the local district court and therefore parties who wanted to remove cases from state to federal court could file removal papers directly with the bankruptcy court so long as a general referral order was in place.

As discussed in *Gianakas* and in the discussion to follow, bankruptcy courts no longer exist as distinct jurisdictional entities. Rather, bankruptcy judges now serve as judicial officers of the district court, and collectively constitute a unit of the district court. As such, including bankruptcy courts in § 451 would be superfluous at best and might even conflict with the current jurisdictional scheme.

9. Panels in the Third, Ninth, Tenth, and Eleventh Circuits have concluded in several instances that bankruptcy courts lack "court of the United States" authority. *See Courtesy Inns, Ltd.*, 40 F.3d at 1085–87 (10th Cir.1994) (bankruptcy judges cannot impose sanctions under § 1927); *Perroton*, 958 F.2d at 893–96 (9th Cir.1992)

(bankruptcy judges cannot permit litigants to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)); *Internal Revenue Serv. v. Brickell Inv. Corp. (In re Brickell Inv. Corp.)*, 922 F.2d 696, 699–702 (11th Cir.1991) (bankruptcy courts cannot award fees under 26 U.S.C. § 7430); *Davis*, 899 F.2d at 1138–42 (11th Cir.1990) (bankruptcy court not "court of United States" for purposes of 28 U.S.C. § 2412); *Matter of Becker's Motor Transp., Inc.*, 632 F.2d 242 (3d Cir.1980) (bankruptcy court not "court of the United States" under Declaratory Judgment Act, 28 U.S.C. § 2201).

Conversely, the Second and Fourth Circuits have expressly permitted bankruptcy judges to exercise such authority. *Grewe*, 4 F.3d at 303–05 (4th Cir.1993) (bankruptcy courts can award fees under 26 U.S.C. § 7430); *Guariglia*, 962 F.2d at 163 (2d Cir.1992) (orders of bankruptcy courts are effectively orders of the district courts).

In addition, the Eight Circuit has questioned bankruptcy court authority to impose § 1927 sanctions on one occasion. *Brown v. Mitchell (In re Arkansas Communities, Inc.)*, 827 F.2d 1219, 1221 (8th Cir.1987) (in *dicta* ). However, a subsequent panel was presented with an opportunity to address this precise issue and instead remanded the case to the bankruptcy court for evaluation of fee requests under 26 U.S.C. § 7430. *United States v. McPeck*, 910 F.2d 509 (8th Cir.1990). This latter remand tends to suggest the Eighth Circuit no longer sees fit to question such authority.

*Ltd.* looked at authority from other Circuits and then wholly adopted the reasoning of the Ninth Circuit in *Perroton,* 958 F.2d at 893–96. In *Perroton,* the panel reasoned that because "bankruptcy courts" are not Article III courts, they lack the authority granted to "courts of the United States" under 28 U.S.C. § 1915(a) to waive filing fees and allow parties to proceed *in forma pauperis.* Both opinions examined the text of U.S.C. § 451, but, unlike the Third and Eleventh Circuits and the court in *Regensteiner Printing Co.,* the panels in *Courtesy Inns, Ltd.,* and *Perroton,* found the language potentially ambiguous. Both then turned to relevant legislative history and purportedly found support in that history for their conclusion that Congress did not intend to permit bankruptcy "courts" to exercise authority otherwise granted to "courts of the United States."

For reasons that follow, this Court respectfully disagrees with the shared conclusion reached in *Regensteiner Printing Co., et al.,* and by the panels in *Courtesy Inns, Ltd.* and *Perroton.* In interpreting 28 U.S.C. § 1927 not to permit bankruptcy courts to exercise powers granted to "courts of the United States," these opinions have misread both the plain text of the relevant statutes and the legislative history of those provisions. The issue is not, as framed by these courts, whether "bankruptcy courts" per se are "courts of the United States." The answer to that question is clearly no because, under present law, "bankruptcy courts" no longer exist as separate jurisdictional or legal entities. There is no legal entity known as "bankruptcy courts," so asking whether such non-existent "courts" are "courts of the United States" is a meaningless question. Instead, bankruptcy judges are by statute judicial officers of the district court to which matters within their jurisdiction may be delegated. This Court follows the reasoning of the Fourth Circuit in *In re Grewe,* 4 F.3d 299, 304 (4th Cir.1993), supporting this view.

Under the Bankruptcy Reform Act of 1978, Congress established bankruptcy courts as "courts of record," 28 U.S.C. § 151(a) (repealed), and granted them original jurisdiction over all bankruptcy matters, 28 U.S.C. §§ 1471(a)–(c) (repealed). By design, Congress clearly intended to establish bankruptcy courts as separate jurisdictional entities, "functionally independent" from the district courts. *Grewe,* 4 F.3d at 304 (*relying on* S.Rep. No. 989, 95th Cong., 2d Sess. 15 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5801). As part of this broad grant of jurisdiction, Congress amended the Title 28 definition of "court of the United States" to include "bankruptcy courts." [10] That change was to become effective on June 28, 1984. *Id.*

Before that effective date, however, the Supreme Court invalidated the jurisdictional scheme established by the Bankruptcy Reform Act in its landmark decision, *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Congress's attempted broad and direct grant of jurisdiction to bankruptcy courts was held to be an unconstitutional delegation of judicial power to non-Article III tribunals. *Id.* at 87, 102 S.Ct. at 2880.

Congress subsequently passed the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA") in direct response to *Northern Pipeline.* BAFJA effectively repealed all provisions of the Bankruptcy Reform Act involving bankruptcy jurisdiction and established the current bankruptcy jurisdictional scheme. BAFJA further provided, *inter alia,* that the earlier provided change to § 451 "shall not be effective." [11] The panels in *Courtesy Inns, Ltd.* and *Perroton* viewed this history as conclusive evidence that Congress did not intend to permit bankruptcy courts to exercise powers traditionally vested in courts of the United States. *Perroton,* 958 F.2d at 896; *Courtesy Inns, Ltd.,* 40 F.3d at 1086. However, those opinions did

---

**10.** Pub.L. No. 95–598, § 213, 92 Stat. 2549, 2661 (1978) (the amended § 451 would have been amended to include the following: "and judge of the bankruptcy courts, the judges of which are entitled to hold office for a term of fourteen years").

**11.** Pub.L. No. 98–353, § 113, 98 Stat. 333, 343 (1984).

not discuss or recognize the new BAFJA statutory scheme, which made the amendment to § 451 that was repealed wholly inconsistent with the current statutory structure.

When responding to *Northern Pipeline*, Congress purposefully intended to eliminate not only the "functional independence" of the bankruptcy court, but also its very existence as a separate and identifiable "court." Under the current statutory scheme, bankruptcy judges serve as "judicial officers of the United States district court." 28 U.S.C. § 152(a)(1). There is no "bankruptcy court" per se as a separate legal entity. Instead, the phrase "bankruptcy court" is merely a collective term of reference for all bankruptcy judges who serve within any district as judicial officers of the district court. Bankruptcy judges now collectively constitute a "unit of the district court to be known as the bankruptcy court for that district." 28 U.S.C. § 151. *See In re Hipp, Inc.*, 895 F.2d 1503, 1514 (5th Cir.1990) (Under 28 U.S.C. § 151, "much of the autonomy has been stripped from the bankruptcy courts, now labeled 'units' of the district courts"); *Gianakas*, 56 B.R. at 748, n. 1 ("We use the words 'bankruptcy court' somewhat loosely ... the bankruptcy court is no longer a distinct entity, but is a 'unit' of the district court").

Federal district courts now have original jurisdiction over all cases and proceedings arising under the Bankruptcy Code. *See* 28 U.S.C. § 1334(a), (d). Under § 157(a), district courts are authorized to refer all cases and proceedings under title 11 to the bankruptcy courts, but such referral is discretionary in recognition of the holding in *Northern Pipeline*. Pursuant to the local rules of this District, all bankruptcy cases and proceedings in the Northern District of Illinois are automatically referred to the bankruptcy judges to the limits of our jurisdiction.[12] The same is generally the case throughout the country. Each district court retains the authority, however, to withdraw such reference at any time pursuant to § 157(d).[13] Thus, while referral in this District is automatic, it is not irrevocable. *See In re Chambers*, 131 B.R. 818, 824 (Bankr.N.D.Ill.1991) (Schwartz, C.J.), *aff'd in pt.* and *rev'd in pt.*, 140 B.R. 233 (Williams, J.) (N.D.Ill.1992). Thus, "bankruptcy courts" no longer exist as distinct jurisdictional entities, but rather have been subsumed within each district court.[14]

■ Under this statutory scheme, sanctions ordered by a bankruptcy judge emanate from a judicial officer of the district court, presiding as part of a unit of that court. The same Title of the U.S.Code that authorizes imposition of sanctions by the district courts under 28 U.S.C. § 1927 also defines bankruptcy judges as judicial officers of the district courts who comprise a "unit" of the "district court." 28 U.S.C. §§ 151, 152(a)(1). An order is therefore entered by the district court when it is entered by a bankruptcy judge sitting as a judicial officer of that district court. *See Guariglia*, 962 F.2d at 163; *Gianakas*, 56 B.R. at 750–51. A district court judge is clearly authorized to impose sanctions in any bankruptcy proceeding. *See, e.g., United States v. Klein*, 910

---

12. Local Rule 2.33(a) provides in pertinent part:
   Pursuant to 28 U.S.C. 157(a), any and all cases under Title 11 U.S.C. and any and all proceedings arising under Title 11 U.S.C. or arising in or related to any case under Title 11 U.S.C. are referred to the bankruptcy judges of this District.

13. Section 157(d) provides:
   The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other law of the United States regulating organizations or activities affecting interstate commerce.
   28 U.S.C. § 157(d).

14. *See Gianakas*, 56 B.R. at 750–51; *see also In re Northwest Cinema Corp.*, 49 B.R. 479, 480 (Bankr.D.Minn.1985) ("I assume when the defendants state in their motion that 'this court' lacks jurisdiction, it is referring to the bankruptcy court. However there really is no bankruptcy court except in name. The term 'bankruptcy court' is solely a phrase that is applied to the bankruptcy judges for a district insofar as those judges together are a unit of the district court. 28 U.S.C. § 151. Thus while functionally there may appear to be a separate bankruptcy court, for jurisdiction purposes there is only one court, i.e., the district court.").

F.2d 1533 (7th Cir.1990) (reinstating a jury verdict obtained in district court that found the defendant guilty of criminal contempt for violation of a bankruptcy court order). Therefore, if the proceeding is of a type that can be referred to a bankruptcy judge, and if the order is within a bankruptcy judge's core or related jurisdiction under 28 U.S.C. § 157(b)(2), a bankruptcy judge clearly has authority to impose sanctions under 28 U.S.C. § 1927.

The legislative history surrounding the definition of "court of the United States" in 28 U.S.C. § 451 further supports this construction. The panels in *Perroton* and *Courtesy Inns, Ltd.* viewed Congress's initial amendment of § 451 and subsequent repeal before the effective date as evidence that Congress did not intend bankruptcy courts to have powers expressly reserved for courts of the United States. However, this interpretation did not recognize the influence of *Northern Pipeline* on Congress's decision to reformulate bankruptcy jurisdiction. To comply with the Supreme Court's edict, Congress found it necessary to eliminate completely all Bankruptcy Reform Act provisions pertaining to the jurisdiction and status of bankruptcy courts, and to reassign bankruptcy jurisdiction to federal district courts. Repeal of the amendment to § 451 was only a minor part of Congress's overall attempt to comply with *Northern Pipeline*. Retention of that amendment to retain reference to "bankruptcy courts" thereby would have been totally inconsistent with the new conceptual approach to jurisdiction contained in BAFJA.

Elimination of that amendment to § 451 could not properly be interpreted to mean, as the panel in *Perroton* suggests, that Congress "intended to strip the bankruptcy court of the power to enter appropriate orders in matters which are incidental to proceedings which are properly before the court." *In re McGinnis*, 155 B.R. 294, 295–96 (Bankr. D.N.H.1993). To the contrary, the Supreme Court expressly stated that Congress may provide that "persons seeking to vindicate (a statutory right) must do so before particularized tribunals created to perform the specialized adjudicative tasks related to that right." *Northern Pipeline*, 458 U.S. at 83, 102 S.Ct. at 2878. Bankruptcy jurisdiction should be construed broadly within the constitutional constraints of *Northern Pipeline*.[15] Under BAFJA, district courts are authorized to refer particular bankruptcy proceedings to bankruptcy judges, who are themselves "judicial officers" of the district court and collectively comprise a "unit" of the district court. *See Melendez*, 153 B.R. at 389. Because district courts clearly are "courts of the United States," and because bankruptcy courts are not separate from, but rather are units of the district court, Congress clearly intended to include bankruptcy courts within the rubric of "court of the United States" depicted in § 451.[16] *See Huff v. Brooks (In re Brooks)*, 175 B.R. 409, 412 n. 7 (Bankr. S.D.Ala.1994) (and cases cited)).

Therefore, whether a bankruptcy judge can entertain the pending Motion will not turn on whether the non-existent bankruptcy court is a "court of the United States." Nor can it be doubted that judicial officers of the District Court are part of a court of the United States under § 451. The only real issue is whether this Motion is a proceeding of the type that can be referred here by the very broad referral order of the district

---

**15.** *See In re Melendez*, 153 B.R. 386, 389 (Bankr. D.Conn.1993) (quoting *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1398 (2d Cir.), *vacated*, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated*, 924 F.2d 36 (2d Cir.), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991) ("The statements of several influential legislators [with respect to BAFJA] ... indicate that bankruptcy jurisdiction was to be construed as broadly as possible within the constitutional constraints of *Marathon*.")).

**16.** Indeed, Congress has made it explicit when enacting recent statutes that bankruptcy courts can exercise jurisdiction and authority conferred upon "courts of the United States." Section 9 of the Negotiated Rates Act of 1993 provides:

§ 9: Limitation on Statutory Construction Nothing in this Act (including any amendment made by this Act) shall be construed as limiting or otherwise affecting application of title 11, United States Code, relating to bankruptcy; title 28, United States code, relating to the jurisdiction of the courts of the United States (*including bankruptcy courts*); or the Employee Retirement Income Security Act of 1974.

Pub.L. No. 103–180, § 9, 107 Stat. 2044 (1993) (emphasis added).

court. The answer to that question turns on whether absence of "bankruptcy courts" from the definition of "court of the United States" in 28 U.S.C. § 451, can properly be read to create an exception to the general authority delegable to bankruptcy judges under 28 U.S.C. §§ 151 and 157.

Under § 151 of the Bankruptcy Code, Bankruptcy judges, as judicial officers of the district court, are expressly authorized to entertain motions that can be heard by the local district court absent a law, rule, or order of the district court providing otherwise.[17] Congress has, in several instances, limited the authority of bankruptcy judges to hear certain matters. For example, most notably, Congress established the core/non-core distinction now fundamental to bankruptcy referral jurisdiction. *See* 28 U.S.C. § 157. Congress did not in any way, however, express intent to prohibit bankruptcy judges from imposing sanctions under § 1927.

Interpreting § 1927, by negative implication, to preclude bankruptcy judges from imposing such sanctions would create an irreconcilable conflict between that statute and the broad grant of referral authority in § 157 of the Bankruptcy Code. *See Melendez,* 153 B.R. at 388 (applying similar reasoning to *in forma pauperis* motions under § 1915(a)). Section 157(a) provides that "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). Under our local district court's general referral order, a motion for sanctions, as a proceeding arising in an adversary case brought under Title 11 U.S.C., is automatically delegated to the bankruptcy court. Local R. 2.33(a). Section 157(b)(1) further grants bankruptcy judges authority to "hear and determine all cases under title

11 and all core proceedings arising under title 11, or arising in a case under title 11, ... and ... enter appropriate orders and judgements, subject to review under section 158 of this title." Thus, in delegating authority to the bankruptcy court to hear Title 11 cases, the district court also delegates its authority to entertain motions necessary adjudicate these cases, including petitions to impose sanctions against an attorney who unreasonably and vexatiously multiplies proceedings in a bankruptcy proceeding.

Overlapping statutes should be read in concert, so as not to conflict with one another, absent "clearly expressed congressional intention to the contrary."[18] There has been no such "clearly expressed" congressional intent. Accordingly, § 1927 should not be construed to prevent a referral that is clearly within the scope of § 157. A district court, which, as a court of the United States, may impose sanctions under § 1927, may also refer a motion, which requests imposition of such sanctions, to a bankruptcy judge. *See Melendez,* 153 B.R. at 388–89; *McGinnis,* 155 B.R. at 295–96; *Korhumel Indus. Inc.,* 103 B.R. at 920–21.

In only one narrow situation has our Circuit found an area where the delegation of authority to a bankruptcy judge had not been allowed with sufficient clarity: that of the authority to conduct jury trials. *Matter of Grabill Corp.,* 967 F.2d 1152, *reh'g. denied,* 976 F.2d 1126 (7th Cir.1992). And the Congressional response to this and similar decisions was to enact an express jury trial authority. Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 112, 108 Stat. 4106 (enacted Oct. 22, 1994).

## B. WHETHER MOTION FOR SANCTIONS GIVES RISE TO "CORE" PROCEEDING

Plaintiff's Motion for Sanctions under 28 U.S.C. § 1927 clearly gives rise to a core

---

17. Section 151 provides in relevant part:
   [e]ach bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding ... except as otherwise provided by law or by rule or order of the district court....
   28 U.S.C. § 151.

18. *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974); *see also Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 252–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (refusing to read statute as limiting another by negative implication where statutes weren't "positively repugnant"); *Melendez,* 153 B.R. at 389.

proceeding. Bankruptcy courts may hear and determine "core" proceedings, 28 U.S.C. § 157(b)(1), but are limited in "related" proceedings to submitting proposed findings of fact and conclusions of law to the district court, 28 U.S.C. § 157(c). Section 157(b)(2) provides a non-exhaustive list of core proceedings and includes "(A) matters concerning the administration of the estate." Motions have been held within core jurisdiction for sanctions under Fed.R.Civ.P. 11 (Fed. R.Bankr.P. 9011), *see, e.g., Memorial Estates*, 950 F.2d at 1370 (7th Cir.1991) (motion for "frivolous filing" sanctions gives rise to core proceeding irregardless of whether conduct occurred in core or non-core proceeding), for violation of discovery rules, *see, e.g., In re Maurice*, 138 B.R. 890, 891 (Bankr. N.D.Ill.1992) (Squires, J.), *aff'd*, 21 F.3d 767 (7th Cir.1994), for civil contempt, *see, e.g., Schatz*, 122 B.R. at 328, and for violations of the automatic stay, *see, e.g., Price v. Rochford*, 947 F.2d 829 (7th Cir.1991) (imposing sanctions under 11 U.S.C. § 362(h) for willful violation of stay).[19] Indeed, in *TCI, Ltd.*, the Seventh Circuit found imposition of sanctions under 28 U.S.C. § 1927 to be within the bankruptcy judge's "authority." 769 F.2d at 447.

As discussed below, Ellis's conduct as counsel for the debtor impeded administration of the Adversary case. Thus, the matter of sanctions related to that conduct clearly constitutes a core proceeding in which this Court is authorized to enter a final order.

## C. MERITS OF MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927

■ Justice delayed is, indeed, justice denied. In *TCI Ltd.*, Judge Easterbrook opined for the panel that "[t]he best way to control unjustified tactics in litigation is to ensure that those who create costs also bear them ... Lawyers who litigate carelessly must now take the consequences ... when an attorney recklessly creates needless costs the other side is entitled to relief." 769 F.2d at 446. Under § 1927, an attorney "who so multiplies the proceedings in any case unrea-

sonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees incurred because of such conduct." 28 U.S.C. § 1927. Vexatious conduct involves either subjective or objective bad faith. *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir.1992). Sanctions under § 1927 are appropriate where an attorney "has acted in an objectively unreasonable manner by engaging in a 'serious and studied disregard for the orderly process of justice' ... or where a 'claim [is] without plausible factual or legal basis and lacking in justification.'" *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir.1988) (citations and emphasis omitted); *see also Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 119 (7th Cir.1994). As a punitive measure, § 1927 should be construed strictly and imposed only "to penalize attorneys who engage in dilatory conduct." *Harriston v. Chicago Tribune Co.*, 136 F.R.D. 482, 485 (N.D.Ill.1991) (citations omitted). Appellate courts will review an award of fees under § 1927 under an abuse of discretion standard. *Fiorenzo*, 840 F.2d at 433.

Ellis's conduct in the case at bar could only be described as an abuse of the judicial process. He was originally to have answered Plaintiff's Complaint on January 29, 1994, thirty days after the Complaint was filed. Instead, Ellis delayed about six months before filing an Answer to Counts 4, 5, and 7. In the course of that period, he disregarded pleading rules and several direct court orders to do so earlier after denying motions to dismiss those counts. After such delays, Ellis left this Court with no choice but to enter an order of default against his client. He then appealed to this Court's desire to try this matter and all other matters on the merits. To avoid having his delinquency fall heavily on his client's head, entry of default judgment was delayed to afford Ellis yet more time to answer those three Counts in default. He promised to so comply. However, when Ellis finally did file an Answer some five months from the date it was originally due, his purported Answer was clearly improper, and Plaintiff's counsel was put to the

---

**19.** Motions for attorneys' fees under 26 U.S.C. § 7430 have also been held to give rise to core proceedings. *See Chambers*, 131 B.R. at 825 (Schwartz, C.J.); *In re Park Place Assocs.*, 118 B.R. 613, 616 (Bankr.N.D.Ill.1990) (Schmetterer, J.) (same).

**92**

burden of filing a Motion to Strike it in its entirety. There can be little doubt Ellis's conduct, in an effort to avoid pleading properly to these Counts of the Complaint, rose to the level of a "serious and studied disregard for the orderly process of justice." The burden of such conduct could well have fallen on the Defendant through entry of a default judgment. It is far more appropriate that an attorney's conduct of this nature fall on the attorney.

Ellis also repeatedly failed to serve opposing counsel proper notice of documents and motions filed with this Court, in flagrant disregard of the Federal Rules of Civil Procedure and our local rules. This is made more ironic here by the fact that these attorneys had offices in the same office building. When asked why he omitted to observe the service and notice requirement, Ellis gave no explanation other than forgetfulness. But such "forgetfulness," when repeated, reflects contempt for the law, the Court, and opposing counsel. This is particularly so after this Court admonished counsel on several occasions for his failure to observe these procedures. Ellis bedeviled opposing counsel with studied misconduct obviously intended to harass him and avoid proper service upon him.

Plaintiff's counsel has presented, as an appendix to his Motion for Sanctions, details as to the costs to Plaintiff resulting directly from Ellis's dilatory conduct. The attorney's time spent as a result of Ellis's conduct discussed here (over and above time actually required for other aspects of litigation) cost plaintiff $2,502.50 (14.3 hours @ $175/hour). This Court has discretion under 28 U.S.C. § 1927 to allow sanctions in an amount sufficient to deter similar or repeated conduct and afford some redress to the offended party. Having in mind the difficulty in determining exactly how much time value of the work of Plaintiff's counsel relates to Ellis's conduct and how much to litigation efforts that would be required otherwise, some reduction in the time presented is warranted. Yet the sanction must have a sting and send a message that will deter similar or repeated conduct. Balancing those concerns, a sanction of $1,000.00 will be allowed.

By reason of the foregoing and by separate order, sanctions in the amount of $1,000.00 will be ordered to be paid by Bernard M. Ellis within a time fixed. Failing said payment, judgment will be entered to enable collection proceedings thereupon.