John **BOYLE**, Plaintiff,

v.

**JEROME COUNTRY CLUB**, Defendant.

**No. Civ 94–0325–S–LMB.**

United States District Court,
D. Idaho.

May 10, 1995.

Jeff Stoker, Twin Falls, ID, for plaintiff.

Randy J. Stoker, Twin Falls, ID, for defendant.

---

## MEMORANDUM DECISION, ORDER AND JUDGMENT

BOYLE, United States Magistrate Judge.

Currently pending before the Court are Plaintiff's Motion for Partial Summary Judgment (Docket No. 5) and Defendant's Motion for Summary Judgment (Docket No. 18).

Having carefully reviewed the evidence of record, studied the briefs, having heard oral argument of counsel, and otherwise being fully advised, the Court issues the following Memorandum Decision, Order and Judgment.

## I.

## INTRODUCTION

Plaintiff John Boyle alleges that Defendant Jerome Country Club (hereinafter referred to as the "Club") discriminates against him because he is a member of the Church of Jesus Christ of Latter-day Saints (hereinafter referred to as the "LDS Church"). The Club's golf tournaments are played on Saturday and Sunday. Plaintiff does not play Sunday's round, due to his religious beliefs, and the Club has refused to make accommodations that would permit him to play his second round on a day other than Sunday. In this respect, Plaintiff claims that the Club has violated 42 U.S.C. § 2000a, Title II of the Civil Rights Act of 1964.

Plaintiff has filed a Motion for Partial Summary Judgment seeking a determination that the Club's golf tournament scheduling which precludes him from playing constitutes discrimination, and that it has a duty to accommodate his religious beliefs under § 2000a. Defendant has filed a Cross–Motion for Summary Judgment alleging that § 2000a is inapplicable to these instant issues.

## II.

### FACTS

Plaintiff is a member of the LDS Church. *See* Plaintiff's Deposition at p. 7, ll. 16–18. He describes his religious convictions as "very strong." *Id.* at p. 34, ll. 24–25. The record establishes that the teachings of the LDS Church counsel against playing golf or other recreational activities on Sunday. *See* Affidavit of Plaintiff (Docket No. 7).

Plaintiff was a golf professional for five years starting in 1969. *Id.* at p. 5, ll. 21–15. He has played golf on Sundays about four times in the past (*id.* at p. 9, ll. 2–7), but his religious beliefs have become stronger over the years and he now feels that it is not appropriate for him to golf on Sunday. *Id.* at p. 34, ll. 21–25. The Court will assume for the purpose of addressing and resolving these instant motions that Plaintiff's reluctance to play golf on Sunday stems from his sincere religious beliefs.

The Club is a non-profit corporation operating an eighteen-hole golf course in Jerome County, Idaho. *See* Amended Complaint, ¶ 2, p. 1 (Docket No. 9). Plaintiff is a member of the Club and belongs to the Men's Association where his dues contribute to the prize money awarded at the Club's tournaments. *Id.* at p. 52, ll. 11–21. A tournament round of golf consists of playing eighteen holes, and typically has an opening round on Saturday and a closing round on Sunday. In 1993, the Club professional, John Peterson, allowed Plaintiff to play thirty-six holes on Saturday during a Club tournament after Plaintiff complained that he could not play the final Sunday round. *Id.* at p. 23, ll. 8–15. But in 1994, Peterson refused a similar request by Plaintiff to play thirty-six holes on Saturday, and Plaintiff did not play in that tournament. *Id.* at p. 23–24.

It is undisputed that the Club has never refused to permit Plaintiff to enter a tournament or to play a round of golf. *Id.* at p. 42, ll. 15–20. The sole question presented to the Court is whether the Club is required under 42 U.S.C. § 2000a to accommodate Plaintiff's religious beliefs and permit him to play a second and final round of tournament golf on a day other than Sunday.

Plaintiff suggests an alternative tournament schedule whereby each participant would be given the option of playing two out of three days with Friday, Saturday, and Sunday available to everyone participating. Under Plaintiff's proposed alternative schedule, a participant could complete thirty-six holes by playing one round on Friday and one round on Saturday, or could play two rounds on Friday or two rounds on Saturday. While Plaintiff's proposal appears reasonable, it is not a legal remedy available to him in the context of this action.

## III.

### ANALYSIS

#### A. *Jurisdiction*

Although neither party raised the issue whether this Court has jurisdiction over Plaintiff's complaint, the Court will raise the issue *sua sponte. See Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976). In this instant action, brought under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, there are certain jurisdictional prerequisites provided in § 2000a–3(c). *See Stearnes v. Baur's Opera House, Inc.*, 3 F.3d 1142, 1144 (7th Cir.1993).

 Specifically, 42 U.S.C. § 2000a–3(c) provides as follows:

> In the case of an alleged act or practice prohibited by this subchapter which occurs in a State, or political subdivision of a State, which has a State or local law prohibiting such act or practice and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, *no civil action may be brought* under subsection (a) of this section *before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority* by registered mail or in person, provided that the court may stay proceedings in such civil action pending the termination of State or local enforcement proceedings. (Emphasis added)

The foregoing provision clearly requires that Title II plaintiffs give prior notice to state or local authorities when a state or local law prohibits religious discrimination in public accommodations, and where the state or local authority is authorized to grant or seek relief from such discrimination.

In *Stearnes v. Baur's Opera House, Inc.*, the plaintiff filed suit in United States District Court in Illinois under § 2000a claiming racial discrimination. The State of Illinois had established a Human Rights Commission with the authority to hear complaints that racial discrimination was preventing persons from "the full and equal enjoyment of the facilities and services of any public place of accommodation." *Id.* at 1145. The plaintiff in *Stearnes* was unable to establish that he had given notice to the Illinois human rights agency prior to filing suit in federal court. The Seventh Circuit found this failure to be a jurisdictional defect that required dismissal of the action. In so concluding, the Seventh Circuit stated that "[a] Title II plaintiff must demonstrate that he or she has met the procedural prerequisites of § 2000a–3(c) prior to filing suit in federal court." *Id.* at 1145. In deciding *Stearnes*, the Seventh Circuit cited with approval a similar case from the Tenth Circuit in which that court also held that notice to the state agency was, under § 2000a–3(c), a jurisdictional prerequisite to filing suit in the federal court. *See Harris v. Ericson*, 457 F.2d 765 (10th Cir.1972).

■ While both *Stearnes* and *Harris* noted that a plaintiff was not required to exhaust state court remedies, it is clear that notice under the statute is a jurisdictional prerequisite to filing a civil action in federal court. The Seventh Circuit held:

The requirements of Section 2000a–3(c) are jurisdictional and, unless those requirements are met, the federal courts do not have jurisdiction to decide the dispute.

Section 2000a–3(c) requires that Title II plaintiffs give notice to state or local authorities when a state or local law prohibits such discrimination and the state or local authority is authorized to grant or seek relief from such discrimination.

\*　　\*　　\*　　\*　　\*　　\*

A Title II plaintiff must demonstrate that he or she has met the procedural prerequisites of section 2000a–3(c) prior to filing suit in federal court. *Hornick v. Noyes*, 708 F.2d 321, 323 (7th Cir.1983), *cert. denied*, 465 U.S. 1031, 104 S.Ct. 1295, 79 L.Ed.2d 696 (1984). We find Harris persuasive and agree that failure to notify the appropriate state agency when one exists dooms a Title II plaintiff's case. In this case, Stearnes did not notify the Illinois Department of Human Rights before he filed his complaint in federal court. By his omission, he failed to comply with the requirements of section 2000a–3(c).

3 F.3d 1142, 1145. With respect to state proceedings, it is also important to note 42 U.S.C. § 2000a–6(a) provides that the federal district court where an action is filed "shall exercise [jurisdiction] ... without regard to whether the aggrieved party shall have exhausted any administrative or other remedies that may be provided by law." In *Stearnes* and *Harris*, the Seventh and Tenth Circuits dismissed those actions for Plaintiff's failure to comply with the notice requirements of § 2000a–3(c). Although the Court's independent research in this instant action has not disclosed a Ninth Circuit decision addressing this question, the Court is of the view, and so concludes, that the Ninth Circuit would follow *Stearnes* and *Harris* if presented with this issue.

■ With respect to the instant action, the State of Idaho has established a state agency to protect human rights. In 1969, the Idaho legislature established the Idaho Human Rights Commission (IHRC) to "secure for all individuals within the State freedom from discrimination because of ... religion ... in connection with ... public accommodations...." *See* Idaho Code § 67–5901(2). The Act prohibits any person from denying an individual "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation." To enforce these provisions, the Act gives the IHRC a grant of authority that ranges from investigating complaints to filing civil actions. *See* Idaho Code §§ 67–5906, –5907.

The legal issues presented in this instant action are virtually identical to *Harris* and *Stearnes*. The record before the Court contains absolutely no evidence that Plaintiff notified the IHRC prior to filing this action. Thus, a vital jurisdictional prerequisite to this suit is absent. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 547, 106 S.Ct. 1326, 1334, 89 L.Ed.2d 501 (1986) (jurisdictional facts must be found in the record, not in briefs or argument). For these reasons, and pursuant to the authority cited in *Stearnes* and *Harris*, the Court concludes this action must be dismissed under 42 U.S.C. § 2000a–3(c) for Plaintiff's failure to give notice to the IHRC.

Although this finding would generally conclude the analysis in this instant action, the Court finds that the circumstances of this case and the efforts of the parties relating to the merits warrants further discussion of the pending dispositive motions. Furthermore, because the legal issues presented are of some considerable import, it is particularly appropriate to reach the merits of the parties' motions.

The Court will discuss first the standard for resolving summary judgment motions, and will then consider the merits of the motions.

### B. *Standards for Resolving Summary Judgment Motions*

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The United States Supreme Court has made it clear that under Rule 56, summary judgment is required if the nonmoving party fails to make a showing sufficient to establish the existence of an element which is essential to his case and upon which he will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the nonmoving party fails to make such a showing on any essential element of his case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.[1]

 Under Rule 56 it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial," *Hahn v. Sargent*, 523 F.2d 461, 463 (1st Cir.1975) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976) or when the "evidence is such that a reasonable jury could return a verdict for the non-moving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986). The Ninth Circuit cases are in accord. *See British Motor Car Distributors, Ltd. v. San Francisco Automotive Industries Welfare Fund*, 882 F.2d 371 (9th Cir.1989).

 In ruling on summary judgment motions, the court does not resolve conflicting evidence with respect to disputed material facts, nor does it make credibility determinations. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.*, 809 F.2d 626 (9th Cir.1987). Moreover, all inferences

---

1. *See also* Rule 56(e), which provides in part: When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
U.S.C.S. Court Rules, Rules of Civil Procedure, Rule 56(e) (Law.Co-op.1987 & Supp.1991).

must be drawn in the light most favorable to the non-moving party. *Id.* at 631. As the Ninth Circuit Court of Appeals has stated, "[p]ut another way, if a rational trier of fact might resolve the issue in favor of the non-moving party, summary judgment must be denied." *Id.*

In order to withstand a motion for summary judgment, the Ninth Circuit has held that a non-moving party

(1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible. (citation omitted)

*British Motor Car Distributors, Ltd. v. San Francisco Automotive Industries Welfare Fund,* 882 F.2d 371, 374 (9th Cir.1989). Moreover, the Ninth Circuit has held that where the moving party meets its initial burden of demonstrating the absence of any genuine issue of material fact, the non-moving party must "produce specific facts showing that there remains a genuine factual issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed." *Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir.1983) (*citing Ruffin v. County of Los Angeles,* 607 F.2d 1276, 1280 (9th Cir.1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980)).

The Ninth Circuit Court of Appeals has acknowledged that in recent years the Supreme Court, "by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment." *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988). As the Ninth Circuit has expressly stated: "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *Id.*

In addressing the application of "The Summary Judgment Test," the Ninth Circuit has specifically explained that:

A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the *substantive law* governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

*T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir.1987) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)) (emphasis added).

**C. Cross–Motions for Summary Judgment**

■ Plaintiff has filed a Motion for Partial Summary Judgment (Docket No. 5) seeking a ruling that the Club violated § 2000a, arguing that the only remaining issue to be decided is the remedy available to him. Defendant has filed a Motion for Summary Judgment seeking a ruling that § 2000a is inapplicable and asserts that Plaintiff is without a remedy. Congress enacted Title II of the Civil Rights Act of 1964 to "vindicate 'the deprivation of personal dignity that surely accompanies denials of equal access to public establishments.'" *Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241, 250, 85 S.Ct. 348, 354, 13 L.Ed.2d 258 (1964) (*quoting from* S.Rep. No. 872, 88th Cong., 2d sess.). To accomplish this broad mandate, the Act is given a liberal construction. *See Hamm v. Rock Hill,* 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964).

Title II is divided into seven sections, but its key provision, and the section squarely at issue in this action, is § 2000a which provides as follows:

All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

Litigation under this statute has concentrated in large part on whether the facility under scrutiny was in fact a "public accommodation." Here, the parties acknowledge that the Club is a public accommodation. With that issue resolved by agreement of the parties, the Court is faced with legal issues on which precious little precedent exists. There are few reported cases discussing such important issues as the burden of proof, the level of scienter required, and other crucial matters. The Court requested post-hearing briefs, and neither side was able to identify any guiding or controlling Ninth Circuit authority.

There is, however, authority from the Seventh Circuit that, while not binding, is persuasive and instructive. In *Hornick v. Noyes*, 708 F.2d 321, 325 n. 8 (7th Cir.1983), *cert. denied*, 465 U.S. 1031, 104 S.Ct. 1295, 79 L.Ed.2d 696 (1984), the court found that the burden of proof in Title II cases would follow the well-established rules governing Title VII cases. The burden of proof in Title VII cases was first clarified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The Ninth Circuit has applied the *Burdine* standard not only to cases under Title VII, but also to cases under 42 U.S.C. § 1981, *DeHorney v. Bank of America Nat'l. Trust & Sav. Asso.*, 879 F.2d 459, 467 (9th Cir. 1989), and the Age Discrimination in Employment Act (ADEA), *Rose v. Wells Fargo & Co.*, 902 F.2d 1417 (9th Cir.1990).

■ Neither parties' briefs, nor the Court's independent research, have revealed any Ninth Circuit cases directly holding that *Burdine's* burden of proof rules apply to Title II cases. But if faced directly with that issue, the Court concludes for purposes of this instant action that the Ninth Circuit would most likely follow the Seventh Circuit's decision in *Hornick* applying *Burdine* burden of proof to Title II cases. This is especially probable given the Ninth Circuit's willingness to extend *Burdine's* rules beyond Title VII to other statutory provisions such as § 1981 and the ADEA.

In applying the *Burdine* rules to this action, the Court is guided by well-established Ninth Circuit precedent. It is clear that Plaintiff has the initial burden of establishing a prima facie case of improper discrimination. *See Wallis v. J.R. Simplot*, 26 F.3d 885, 889 (9th Cir.1994). The degree of proof necessary for plaintiff to establish his prima facie case is "minimal and does not even rise to the level of a preponderance of the evidence." *Id.* Once a plaintiff has made a prima facie case, a presumption arises of unlawful discrimination. *Id.* The burden then shifts to the defendant "who must offer evidence that the adverse action was taken for other than impermissibly discriminatory reasons." *Id.* If the defendant proffers such legitimate reasons, the "presumptions created by the prima facie case disappear." *Id.* at 892. In order to prevail, plaintiff must show that the alleged reasons are "a pretext for another motive which is discriminatory." *Id.* at 889.

■ While summary judgment is not generally favored in these types of cases, the Ninth Circuit has granted summary judgment in a recent case where the plaintiff established a prima facie case but was unable to rebut the defendant's legitimate explanation. *Wallis*, 26 F.3d at 892. In *Wallis* the court held that to resolve a summary judgment motion, the Court must review "the actual evidence offered by each party to see whether a genuine issue of fact has been presented for trial." *Id.* at 889.

■ In carefully and thoroughly reviewing the evidence presented in the instant action, the Court finds that Plaintiff has provided the "minimal" evidence necessary to establish a prima facie case. The undisputed record before the Court indicates that the Club's final tournament rounds are held on Sunday, and Plaintiff's religious beliefs prevent him from playing on Sunday. The Club's scheduling of its tournaments on Sunday prevents Plaintiff from "the full and equal enjoyment of the ... services ... privileges ... [and] advantages" of the Club under § 2000a. Accordingly, the burden now shifts to the Club. The evidence submitted by the Club establishes that at least six LDS couples have become members of the Club and play in the tournaments on Sunday. *See* Affidavit of Peterson, ¶¶ 4–5, p. 2 (Docket

No. 16).[2] At least three LDS members of the Club played in the Club's major 1994 tournament. *Id.* at ¶ 4, p. 2. Further, and most compelling, is the fact that the Club has never received a request from an LDS member, other than Plaintiff, to change the tournament Sunday schedule to accommodate their religious beliefs. *Id.* at ¶ 16, p. 6.

■■■ This evidence establishes to the Court's satisfaction that the Club is not discriminating generally against members of the LDS Church in scheduling Sunday tournament play. In the face of this undisputed evidence, Plaintiff's case is reduced to an argument that the Club is discriminating against LDS members who adhere strictly to the religious teachings that counsel against playing golf on Sunday. In the Court's opinion, this argument falls apart quickly when examined in the light of the other evidence in the record.

The Club professional, John Peterson, states in his affidavit that:

[A]llowing a member to change the routine of a tournament creates an extremely bad precedent. Doing so would have an effect on other members in the tournament, [and] would "open the door" to allow every participant in the tournament to make special requests....

It is the practice of this club, as well as most tournaments that I have familiarity with that the final round of a tournament is scheduled in "reverse order." In other words, the lowest scoring player plays at the end of the tournament. This is done for economic reasons, for enhancement of the tournament, for comradery, and it is customary.

Affidavit of Peterson at ¶ 8, p. 4. Peterson goes on to note that marshals, or umpires, would have to accompany Plaintiff on his alternative rounds, and that this would increase the marshals' workload. *Id.* at ¶ 15,

p. 6. In addition, Plaintiff's alternative rounds on either Friday or Saturday would be played when the course is open to the general public for non-tournament play, and the requirement that Plaintiff's play be monitored by marshals would delay the public's play and cause further complications. *Id.* at ¶¶ 14–15, p. 6. Further, if the lowest scoring player was not playing on Sunday, the custom of having him finish the last round would be broken. *Id.*

Peterson is not asserting that other alternatives are impossible for the Club, but only that they would create additional complications and expense making the administration of the tournament more difficult. Of course, these difficulties could be overcome if there was a sufficient demand for an alternative schedule, as shown by the examples of other golf clubs cited by Plaintiff that use a Sunday alternative schedule. But in this instant action, and based on the record before the Court, it is clear that demand for a non-Sunday tournament day clearly does not exist. Peterson's affidavit contains his undisputed, sworn statement that no member of the Club, other than Plaintiff, has ever requested an alternative schedule. *Id.* at ¶ 16, p. 6.

■■■ The Club has presented substantial evidence that it has legitimate business reasons, completely unrelated to religious considerations, for scheduling its final round of play on Sunday.[3] The Court must now examine, as the next step of its analysis whether Plaintiff has submitted evidence showing that the Club's reasons are pretextual. Plaintiff has presented evidence that other clubs use the suggested alternative schedule, *see* Deposition of Plaintiff, p. 48, 11. 22–25; p. 49, 11. 1–14; evidence that an alternative schedule would not be unduly expensive, *id.* at p. 53, 11. 22–25; p. 54, 11. 1–3; evidence that the alternative schedule would not result

2. This evidence is clearly hearsay. Because the Plaintiff did not move to strike the affidavit, thereby waiving any objection, the Court may consider it. *Allen v. Scribner*, 812 F.2d 426, 435 n. 18 (9th Cir.1987) *amended* 828 F.2d 1445 (9th Cir.1987). In addition, Plaintiff himself corroborates this evidence in his deposition testimony. *See* Deposition of Boyle at pp. 16–17.

3. There is some indication that the Ninth Circuit might require the Club to prove that its existing tournament schedule is required by business necessity or has a "manifest relationship" to the Club's business. *See Larry P. v. Riles,* 793 F.2d 969, 982 at n. 10 (9th Cir.1984). The above discussion of the evidence in the record establishes that the Club has met this standard as well.

in unfair benefits to golfers like Plaintiff, *id.* at pp. 45–55; and evidence that the alternative schedule would not violate the United States Golf Association rules that govern such tournaments generally. *Id.* at 53, 11. 17–21.

However, Plaintiff has not demonstrated that the central reason advanced by the Club for staying with its original schedule is pretextual. The Club claims, and the record conclusively establishes, that adding an additional round to the tournament schedule on either Friday or Saturday would cause additional administrative complications associated with monitoring the extra round and incorporating tournament play with general public play. The parties disagree about the extent of these difficulties, but there is no evidence in the record that the tournament schedule could be expanded as suggested by Plaintiff without disruption. Certainly the record accords with common sense. Increasing the scope of any event generally adds complications and problems, many of which are unanticipated. To this extent, the Club's reasons are not pretextual.

While other clubs may have sufficient demand to warrant an effort to overcome the disruptions and additional work an extra or alternative day of tournament play would create, the record in this instant action conclusively establishes that there has been no demand whatsoever for an alternative schedule prior to Plaintiff's request that is at the heart of the issues presented here. It is axiomatic that a business, such as the Jerome Country Club, would create problems and complications if it altered a successful format when the change would involve considerable, additional administrative complications and where the demand for such a request, other than Plaintiff's request, is virtually non-existent. In conclusion, after considering the entire record, the Court can find no evidence that the legitimate business reasons advanced by the Club for staying with its existing Saturday–Sunday tournament schedule are pretextual.

This may have been a much different case if there had been evidence of actual religious discrimination. For example, in *Anderson v. Pass Christian Isles Golf Club, Inc.,* 488 F.2d 855 (5th Cir.1974), two African–American plaintiffs brought suit against a golf club under § 2000a for racial discrimination. When the plaintiffs attempted to play at the course, "they were met and turned away by the club pro ... who informed them that blacks were not permitted to play at the course." *Id.* at 856. In addition, there was testimony that the club pro had been informed by the board of governors "of a club policy of excluding blacks and had acted pursuant to that rule in denying access to plaintiffs." *Id.* at 857. Such circumstances based on religion do not exist here.

In *Anderson,* the court found a clear violation of § 2000a. Not every case has such direct evidence of discrimination, and this Court is not requiring Plaintiff in this case to present such direct evidence. However, Plaintiff must produce some evidence to show that the Club's legitimate business reasons are a pretext for discrimination. In the Court's well formed opinion, Plaintiff has not met that standard.

Plaintiff would also have a stronger case if Congress had extended to patrons of a public accommodation the same protections afforded to employees. For example, after Title VII of the Civil Rights Act of 1964 was enacted by Congress, the supervising federal agency, the Equal Employment Opportunity Commission (EEOC) adopted a regulation requiring employers "to accommodate to the reasonable religious needs of employees ... where such accommodation can be made without serious inconvenience to the conduct of the business." 29 C.F.R. § 1605.1 (1967). At the time this regulation was promulgated, Title VII itself contained no reasonable accommodation language. In 1972, Congress adopted the EEOC's reasonable accommodation language in an amendment to Title VII contained in 42 U.S.C. § 2000e(j). The Ninth Circuit has applied the reasonable accommodation provisions in several cases to protect employees, and to require employers to accommodate the religious beliefs of employees. *See, e.g., EEOC v. Hacienda Hotel,* 881 F.2d 1504 (9th Cir.1989).

Thus, Congress, the courts, and the supervising federal agency, all agreed that the employment relationship was sufficiently im-

portant to warrant protecting employees by requiring that their religious beliefs be reasonably accommodated by employers. The Court is not able to extend these same protections enjoyed by employees, as contemplated in *Hacienda Hotel,* under Title VII to club members desiring to change a golf tournament schedule.

In the three decades since Title II was enacted, Congress and the supervising federal agencies have never added language to Title II to extend Title VII's employee protections to customers or patrons. In the Court's view, this is persuasive evidence of a congressional intent not to require Title II public facilities to reasonably accommodate the religious beliefs of patrons. *See* 2A Southerland, *Statutory Construction* § 51.02 at p. 123 (5th ed. 1992) ("Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute governing a related subject is significant to show that a different intention existed."). Adding additional support is the complete absence of any court decision in the past thirty years applying the reasonable accommodation requirements of Title VII to Title II.[4]

The Court therefore declines Plaintiff's invitation to rewrite or extend Title II to require public facilities to accommodate the religious beliefs of the Club's golf tournament patrons. It is the role of Congress to legislate, and it would be an inappropriate judicial intervention if this Court were to go beyond its intended role of interpreting the statutes and applying the law. Those public facilities now covered by Title II are prohibited from discriminating against patrons on the basis of religion. To go beyond the

intended language of Title II, and require public facilities to affirmatively accommodate patrons' religious beliefs in a recreational golf tournament setting is not appropriate nor allowed under the applicable legislation. Such extraordinary change, not required by the language of any existing statute, is clearly a matter for Congress, not this Court.

While the Court respects Plaintiff's religious convictions and beliefs, his inability to participate in Sunday golf tournament play at the Jerome Country Club is self-imposed. Accordingly, Plaintiff is without legal remedy in this action.

### IV.

### CONCLUSION

In conclusion, the Court finds that no rational trier of fact could conclude that the Club violated 42 U.S.C. § 2000a. On the contrary, other members of the LDS Church are members of the Club, and play in its weekend tournaments. The Club has demonstrated legitimate business reasons for holding its final round on Sunday, and for rejecting Plaintiff's proposed alternative schedule. In the Court's well formed opinion, the Club is not required under the law to reasonably accommodate Plaintiff's religious beliefs in this golf tournament setting. The Club is obviously required, however, to refrain from discriminating on the basis of religion pursuant to 42 U.S.C. § 2000a. However, the Court finds no evidence in this record that the Club is discriminating against members of the LDS Church or any religion in violation of § 2000a. The Court therefore finds no genuine issues of material fact under Rule 56 that would preclude granting of summary judgment to the Club.

As an independent ground for dismissing this action, the Court holds that Plaintiff has failed to comply with the jurisdictional notice requirement to the Idaho Human Rights

---

4. This Court has applied Title VII's burden of proof requirements to this Title II case. The burden of proof rules are procedural in nature, and, as discussed previously, the Ninth Circuit has frequently applied Title VII burden of proof rules to other statutes. In stark contrast, the reasonable accommodation language of Title VII is substantive in nature, and no court of which

this Court is aware, including the Ninth Circuit, has ever applied that language to Title II. There is, therefore, a marked distinction between adopting a procedural provision of Title VII for which precedent exists, and adopting a substantive provision of Title VII for which no precedent exists.

Commission set forth in 42 U.S.C. § 2000a–3(c).

The Court therefore grants the Club's Motion for Summary Judgment, and denies Plaintiff's Motion for Partial Summary Judgment.

## V.

### JUDGMENT

Based on the foregoing, IT IS HEREBY ORDERED:

1. Plaintiff's Motion for Partial Summary Judgment (Docket No. 5) is DENIED.

2. Defendant's Motion for Summary Judgment (Docket No. 18) is GRANTED.

3. The above-entitled action is DISMISSED in its entirety.

4. Judgment shall be entered in favor of Defendant.